# Juniata Building and Loan Association *versus* Hetzel.

1. Parol evidence is admissible to show a verbal contemporaneous agreement, which induced the execution of a written obligation, though it may change the terms of the written contract.

2. In a suit by a building association against a surety on a bond given to secure a loan made by the association to a member thereof, evidence that it was the custom of the association to secure its loans by real estate security, which was treated as primary security and was first resorted to, is incompetent.

| | |
|---|---|
| 103 | 507 |
| 173 | 329 |
| 103 | 507 |
| 179 | 182 |
| 103 | 507 |
| 201 | 145 |
| 103 | 507 |
| 20 SC | [1]141 |
| 103 | 507 |
| e207 | [5]103 |
| 103 | 507 |
| f 34 SC | [5] 82 |
| j 34 SC | [1] 87 |
| e 34 SC | [1]547 |
| 34 SC | 548 |
| 103 | 507 |
| f220 | [1]292 |
| 103 | 507 |
| 226 | [5]269 |
| 41SC[1] | 14 |

[Juniata Building Association *v.* Hetzel.]

3. In such a case it is error to allow the defendant to be asked whether he would have signed the bond in suit unless it had been understood and agreed at a meeting of the directors that certain real estate should be mortgaged as security for the loan, and be first liable for its repayment.

4. The by-laws of a building association provided that borrowers from it "shall secure the payment of said loan with legal interest by satisfactory bond or mortgage upon real estate," etc. *Held*, that the officers of the association had power to take both securities, and if both were taken, with sureties on the bond, the presumption would be that the officers relied upon the security of both; and that the association was not restricted to the pursuit of one before the other.

5. When an instrument of writing is sought to be impeached by an equitable defence, the uncorroborated testimony of the defendant is insufficient to carry the case to the jury.

May 9th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.   CLARK, J., absent.

ERROR to the Court of Common Pleas of *Bedford county :* Of January Term 1883, No. 140½.

Judgment was entered by the Juniata Building and Loan Association on a bond and warrant executed by John K. Taylor, Mary E. Weaverling, and J. J. Hetzel, to said association. Upon petition, the judgment was opened as to J. J. Hetzel, and he was let into a defence.

Upon the trial, before BAER, P. J., the plaintiff put the bond in evidence and rested.   Defendant, J. J. Hetzel, being called, offered to prove the following facts, viz. : " That he was surety on the judgment bond which was given to the plaintiff to secure a loan granted by the association to John K. Taylor ; that it was the custom of the association to secure its loans by real estate security in the first instance, that such real estate was treated as the primary security, and was first resorted to for the collection of the loan, that the mortgage in this instance was so taken and treated ; and that it was also the custom to require from the borrowers a bond with some third person as surety ; that it was not the custom to enter up the bond, but to file it among the papers of the association, to be resorted to after the mortgage was exhausted, and not till then ; that the bond in suit was given with this understanding ; that the land mortgaged was ample to pay the debt, and that the mortgage security was lost through the carelessness of the plaintiff in having the mortgage illegally acknowledged before its own vice-president ; to be followed by evidence that under the constitution of the association no loan could be made except upon real estate security, and that on the day that this loan was made a resolution was passed by the board of directors that Taylor should

[Juniata Building Association *v.* Hetzel.]

have the money when his papers were properly executed, and that the papers were not pioperly executed.

Offer objected to. Objection overruled and evidence admitted. Exception. (First assignment of error.)

The defendant then testified in effect that John K. Taylor, a member of the Juniata Building and Loan Association, bid off a loan of $600, and offered as security therefor his bond and warrant of attorney with James W. Trimbath as a surety, and a mortgage on a tract of land. The board of directors of the association passed a resolution on the night the loan was applied for, that " When papers are properly executed Taylor is to have the money." Trimbath having declined to go upon the bond, Taylor applied to defendant to become his surety, who consented after Taylor procured the signature of Mrs. Weaverling as co-surety.

Defendant was asked " whether he would have signed the bond in suit unless it had been understood and agreed at the meeting of the directors that the real estate of Taylor and wife should be mortgaged for its payment and be first liable for its payment." Objected to. Objection sustained and the offer rejected in that form, but the evidence admitted, if the witness be asked to testify in the inverse order of the offer and leading questions avoided. Exception. (Second assignment of error.)

Defendant then testified as follows : " Q. Was there any agreement as to how this loan was to be secured, and if so what was said ? A. That John K. Taylor comply with the constitution and by-laws, was the agreement. Q. In what particular? A. That the mortgage should be given on the real estate as security. In addition thereto that there should be a judgment bond with additional security. Q. Was that done before you signed it? A. Yes, sir. Q. Would you or would you not have signed that bond if it had not been for that ? A. No, sir, on no condition, if it had not been for that agreement, on no condition."

It appeared further from defendant's testimony that at the meeting at which the loan was applied for, the defendant bid the loan off for Taylor as his proxy ; defendant had been a director of the association for fifteen months, and knew that John A. Gump before whom, as a justice of the peace, the acknowledgment of the mortgage was taken, was vice-president of the association, and saw that the mortgage had been so acknowledged before he signed the bond.

The record of proceedings on the mortgage was put in evidence showing that the acknowledgment had been declared void and the land discharged from lien of the mortgage.

Plaintiff, in rebuttal, by several witnesses, including the vice-president and members of the board of directors of the

association at the time the loan was made, contradicted by positive evidence the allegation that any agreement was made with defendant limiting his liability in any way.

The plaintiff asked the court to charge the jury : That the evidence to set aside a solemn instrument of writing on the ground of a parol contemporaneous agreement or of fraud, must be clear, precise and indubitable, and that there is no such evidence in this case, and their verdict must be for the plaintiff."

Answer. " The law is well stated in this point. A solemn instrument in writing can only be set aside on the ground of a parol contemporaneous agreement, or on the ground of fraud, by clear and satisfactory evidence. Whether in this case there is proven such clear and satisfactory evidence of a contemporaneous agreement or of a fraud, is a question of fact to be decided by the jury. If the jury find there is no such clear and satisfactory proof, the verdict should be for the plaintiff. (Fourth assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this of error, assigning for error, inter alia, the admission of defendant's offers of evidence and the answer to plaintiff's point.

*Alex. King* and *William M. Hall*, for plaintiff in error.— Defendant only testified to his own understanding of his liability, the allegation of a contemporaneous agreement was denied, and a chancellor invariably refuses to decree on the uncorroborated testimony of an interested party in opposition to the oath of the other party : Brawdy v. Brawdy, 7 Barr 157 ; Moss v. Culver, 14 P. F. S. 414. An instrument of writing can only be contradicted on the ground of fraud, by clear and indubitable evidence : Stine v. Sherk, 1 W. & S. 195 ; Miller v. Smith, 9 Casey 386; Woods v. Farmare, 10 Watts 195. To sustain the defendant's allegation some representation must be proved to have been made by the officers of the association acting within the scope of their powers : Gass v. Citizens' B. & L. Association, 9 W. N. C. 326.

*John Cessna* (with whom were *Russell & Longenecker* and *J. B. Cessna*), for defendant in error.—We do not attempt to contradict a writing nor ask relief on the ground of fraud or mistake. It was the duty of the association to see that the mortgage was properly executed. Upon a contract of suretyship if the plaintiff does or omits to do any act which his duty requires him to do, and the omission proves injurious to the surety, the surety will be discharged: Story's Eq. Jur. § 325 ; Brandt on Suretyship §§ 387, 200 ; Strange v. Fooks, 4 Gifford 408 ; Wulff v. Jay, L. R. 7 Q. B. 756 ; Watts v. Shuttleworth,

5 H. & N. 233 ; Stratton v. Rastall, 2 T. R. 366.   The constitution required that the officers should see that all mortgages were properly executed ; and this became part of the contract with the defendant, who, as a surety, is entitled to stand on the strict terms of the contract : Bank v. Barrington, 2 P. & W. 27.   If the testimony of a dozen witnesses had differed from that of the defendant, it would still have remained for the jury to determine the questions of fact involved : Devine v. Miller, 37 Leg. Int. 436.

Mr. Justice TRUNKEY delivered the opinion of the court, October 1st 1883.

No principle is better settled than that parol evidence is admissible to show a verbal contemporaneous agreement, which induced the execution of a written obligation, though it may vary or change the terms of the written contract.   Therefore it was competent for the defendant to prove, if he could, that it was agreed before and at the time he signed the bond, that it should not be resorted to until after the security of the mortgage was exhausted, and that the security of the mortgage was lost through the plaintiff's negligence.   But evidence of the practice or custom of the association in dealing with other persons was incompetent.   There was no proof, nor offer of proof, of either a general or local custom ; nor was there any usage of trade or previous like dealings between the parties to the bond. It was error to admit so much of the offer which constitutes the first assignment, as relates to and is founded upon an alleged custom.

The facts from which inferences are to be drawn are to be detailed by the witnesses, and the work of inference is for the jury.   Under the rule admitting parties to testify in their own behalf, where the character of the transaction depends on the intent of the party, it is competent for him to testify what his intention was.   His answer is, of course, not conclusive, but to be considered with other evidence : Thurston v. Cornell, 38 N. Y. 281 ; Cortland Co. v Herkimer Co., 44 Id. 22 ; Snow v. Paine, 114 Mass. 520.   Where a plaintiff had conveyed property to his wife, and it was sought to impeach the deed, on the ground that it was fraudulently made, it was held that, inquiry into his intention and motive in making the deed to her being relevant and material, it was competent for him to testify that he made the deed in good faith : Thacher and wife v. Phinney, 7 Allen (Mass.) 146.   In a carefully considered case it was remarked that the authorities that intent may be testified show no more than this.   When the doing of the act is not disputed, but is affirmed, and whether the act shall be held valid or invalid hangs upon the intent with which it was done, which

intent, from its nature, would be formed and held without avowal, then he, upon whom the intent is charged, may testify whether he secretly held such intent when he did the act. This does not apply to the making of contracts, and a party to a contract shall not testify his undisclosed purpose or intention to nullify words and acts relied upon by others, which in themselves prima facie evidence the agreement. Minds cannot meet where one keeps to itself what it means to do. Where the oral bargain goes before the written agreement, signed and delivered without qualification, one of the parties shall not testify that he meant something else : Dillon *v.* Anderson, 43 N. Y. 231. In that case the defendant alleged a verbal agreement that another person was also to sign the bond, and he was not allowed to answer the question, "Did you intend to make an individual contract ?"

In a suit on bonds the defendant was asked in chief : "What was the inducement that led you to sign the bonds and mortgage ?" "Did you sign these bonds and the mortgage relying at the time upon the contemporaneous agreement in parol ?" "In consequence of the acts and declarations of Mr. Colt, did you sign these papers ?" which were overruled, but he was permitted to state all that was said and done before and at the time of the execution of the bonds. This court held that no principle would have justified the court below in admitting such interrogatories; that testimony of the unexpressed intent, motive or belief of the defendant was inadmissible ; and that the thoughts of one party to a contract cannot be proved to bind the other : Spencer *v.* Colt, 89 Pa. St. 314.

The defendant being a witness in his own behalf was allowed to testify that he would not have signed the bond unless it had been agreed that the real estate of Taylor and wife should be mortgaged as security for the loan, and be first liable for its repayment. That was error, and the second assignment must be sustained.

The plaintiff's by-laws provided that the treasurer shall have charge of all deeds, bonds, mortgages, &c. on which money is loaned ; that the treasurer and solicitor shall prepare all bonds, mortgages, contracts and other writings to be given or taken ; that the borrower "shall secure the re-payment of said loan with legal interest, by satisfactory bond or mortgage upon real estate in the county of Bedford ;" and that the president, secretary and solicitor shall examine all papers offered as security for loans. These regulations were for guidance of the officers, and to a great extent the observance of them was a matter that alone concerned the association and its officers. They authorized the officers to take either a bond or mortgage for a loan—both could be taken without wrong. If both were taken, with sure-

ties on the bond, the presumption would be that the officers relied upon the security of both, and that the association was not restricted to the pursuit of one before the other.

At a meeting of the association, Taylor, by proxy, bid for money, and was a successful bidder; the proxy gave the name of J. W. Trimbath as surety; the board of directors resolved that " when papers are properly executed, Taylor is to have the money." Hetzel, the defendant, was a director of the association, attended and took part in the meetings; he was Taylor's proxy. At a subsequent meeting of the board, the solicitor brought in the mortgage, signed by Taylor and wife, acknowledged before John A. Gump, a justice of the peace, who was vice-president of the association. Trimbath refused to go on the bond, for which cause the papers were reported incomplete. After the meeting, Taylor arranged with Hetzel to become surety with Mrs. Weaverling, and he signed below her name, knowing at the time that the vice-president had taken the acknowledgment of the mortgage. He sets up an agreement of which he thus testifies : " Q. What was agreed and understood with reference to the security on the real estate ?  A. My name was not mentioned in connection with the security." " Q. What was understood and agreed ?  A. It was understood that this farm belonged to Rosanna Taylor, and the mortgage was to be on it." " Q. Was or was not your subsequent action in reference to that argument ?  A. It was based entirely on what took place in the board of directors that night." " Q. What did you do ?  A. After this time I signed this bond of John K. Taylor for $600, as I understood." " Q. Was there any agreement as to how this loan was to be secured, and if so what was said ?  A. That John K. Taylor comply with the constitution and by-laws was the agreement." " Q. In what particular ? A. That the mortgage should be given on real estate as security. in addition thereto. That there should be a judgment bond with additional security." This is his statement of what was done and said to constitute an agreement. None was made with Trimbath. None was made with himself. The meetings were all before he signed the bond—at them his name was not mentioned as security. It was afterwards that Taylor asked him to sign the bond. All that the directors did was to pass the resolution. Neither resolution nor by-laws declare that the mortgage shall be primary security, and that the bond shall only be security for the sufficiency of the mortgage. He repeatedly declared in his testimony that he would not have signed the bond had it not been for that agreement; but as already seen, it was inadmissible for him to so testify; neither was it competent for him to infer an agreement. Taking the

7 Outerbridge—33

[Juniata Building Association *v.* Hetzel.]

statement of the defendant as to what was actually said and done as true, the plaintiff's point should have been affirmed.

Although we consider the competent testimony of the defendant, even if supported by many witnesses and corroborating circumstances, utterly insufficient to establish a verbal contemporaneous agreement, to avoid misapprehension, we remark the question, whether an equitable claim can be established by the uncorroborated testimony of the claimant, when denied by the opposite party on oath. The defendant seeks to escape liability on the ground of a verbal agreement that induced him to sign the bond, because it shifted his position, as it appears on the face of the bond, to a secondary one which cannot be reached until after exhaustion of another security. He sets up an equitable defence, and contends that if the testimony of himself stands alone, and is contradicted by a dozen witnesses, it remains for the jury to determine the facts involved. This is true as respects every question of fact in any claim at law; but every right founded upon a claim which is strictly equitable, whatever the form of procedure, should be supported by evidence that would satisfy a chancellor. If a fact be averred in the bill and denied in the answer, it cannot be pretended that the uncorroborated testimony of the plaintiff would be sufficient to establish such fact in a court of equity. In an ejectment for specific performance, it was remarked by Chief Justice GIBSON: "It is true that the verdict in an ejectment like the present may be well found on the oath of a single witness, because there is no opposing oath of the defendant; and it is also true that unlike a chancellor the court cannot give judgment non obstante veredicto; but rather than give judgment in conformity with it, when found on insufficient evidence, it would be proper to grant new trials forever, and to save the vexation of such useless litigation, it is equally proper to indicate beforehand the measure of evidence the chancellor would require:" Brawdy *v.* Brawdy, 7 Pa. St. 157. In that case the court below had directed a verdict for the defendant on the ground that the plaintiff's evidence was insufficient to warrant a decree, and the judgment was affirmed. That doctrine applies as well when a defendant sets up an equitable claim. Now that parties are competent witnesses, each may oppose his oath to the other's, and certainly when written contracts or obligations are sought to be impeached by defences purely equitable, the reason is stronger than formerly for enforcing the rules of evidence applicable to cases in equity.

Judgment reversed, and venire facias de novo awarded.