## Streator, Appellant, *v.* Paxton.

| | |
|---|---|
| 201 | 135 |
| 19 SC [2]476 | |
| 201 | 135 |
| d 24 SC [1]203 | |
| 201 | 135 |
| 27 SC [1]378 | |
| 201 | 135 |
| 33 SC [1]593 | |

*Evidence—Contract—Written agreement—Contemporaneous parol agreement.*

Where several parties unite in a written agreement by which they are to form themselves into a company for the purpose of leasing lands for oil and gas, and by which they are to share equally the expenses, one of the parties cannot set up a contemporaneous parol agreement contradictory in terms of the written agreement, and to the effect that in consideration of his giving the benefit of his experience in the natural gas and oil business, he should be relieved from payments under the written agreement, and the same should be paid for him by the other parties until his share of the profits would be sufficient to repay the same.

Parol evidence to vary or change a written instrument must be clear, precise and indubitable.

*Contract—Joint and several contracts—Corporations—Option to purchase stock.*

Where several corporators agree " each with the other that no one of them would sell or transfer his holdings in said corporation to any outside party without first giving the remaining corporators the right to purchase said holdings at the same price that could be obtained for the same from any other party," the agreement is a several contract, and not a joint undertaking.

Where several manufacturers unite to form a corporation to secure natural gas for their establishments and to guard themselves against imposition and an increased price at the hands of gas companies in the field, and it is stipulated that each one of the parties should not sell his stock to outside parties without first giving the others the right to purchase his stock at the same price that could be obtained for it from outside parties, one of the parties to the agreement cannot prevent the others from selling their stock, where under the terms of the sale all of the parties are protected in the very purpose for which the corporation was formed.

Argued Oct. 23, 1901.    Appeal, No. 129, Oct. T., 1901, by plaintiff, from judgment of C. P. Washington Co., Nov. T., 1900, No. 126, non obstante veredicto in case of J. B. R. Streator v. A. B. Paxton, R. J. Beatty, William H. Griffiths,

William P. Tyler, J. W. Paxton and H. B. Duncan. Before
McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit for breach of two parol contracts.

The plaintiff's statement was as follows:

On July 12, 1899, the plaintiff and the defendants, except
H. B. Duncan, who afterwards became the substitute of James
E. Duncan, herein named, entered into the following agreement in writing, to wit:

[The agreement is quoted in the opinion of the Supreme
Court.]

After the execution of said writing, the said James E.
Duncan, who is one of the parties thereto, became ill and died
January 2, 1900, and the defendant, H. B. Duncan, prior to
the death of James E. Duncan, became the substitute of the
latter in all matters pertaining to the said written agreement,
and so acted and was accepted by the plaintiff and all of the
other defendants in all matters relating thereto.

Prior to the date of said agreement, the plaintiff had been
prospecting with a view of obtaining leases for contiguous tracts
of land for the purpose of opening up a field for the production of natural gas, and had mapped out the lands which his
experience in said business led him to consider available for the
said purpose; and he, as well as all of the other parties to said
agreement, were interested in manufactories, located in the
vicinity of the borough of Washington, in which natural gas
was used for fuel, the same being supplied to the owners of
said manufactories, at the price of nine cents per thousand
cubic feet, subject to a rebate for cash.

Pursuant to said agreement, the plaintiff, who was experienced in the production and marketing of natural gas, while
the defendants were wholly inexperienced therein, proceeded to
take leases of lands in the territory aforesaid, and, on August 1,
1899, entered into a contract for the drilling of a well on one of
the tracts so leased, which contract was subsequently approved
by the defendants, and the well, when completed, proved to be
a producer of natural gas in paying quantities.

The first formal meeting of the parties of which a minute
was kept, was held August 31, 1899, for the purpose of or-

ganizing a gas company, and there were present H. B. Duncan, J. B. R. Streator, R. J. Beatty and A. B. Paxton, who proceeded to elect H. B. Duncan as president, R. J. Beatty as treasurer, and A. B. Paxton as secretary, and the following board of directors, to wit: H. B. Duncan, J. B. R. Streator, R. J. Beatty, J. W. Paxton, A. B. Paxton, William P. Tyler and William H. Griffiths, all to serve until their successors were chosen; and H. B. Duncan was chosen to see counsel relating to securing a charter, and it was voted to fix the capital stock at $50,000, divided into 500 shares of the par value of $100 each.

Subsequently, pursuant to changes made by the parties to this suit, to wit: on November 6, 1899, a charter of incorporation was obtained on the application of all of said parties, under the name of the Natural Fuel Company, with a capital stock of $28,000, divided into 280 shares of the par value of $100 each, and the said shares were allotted to the plaintiff and the several defendants in equal proportions, to wit: forty shares to each. After obtaining said charter, the said corporation was promptly organized, and all of the parties to this suit were directors thereof from the time of its organization until the date of bringing this suit, and no change was made in the stockholders therein, or the number of shares held by each, prior to June 15, 1900.

In consideration of the plaintiff giving to the other corporators the benefit of his experience in the production and marketing of natural gas, and in the location by him of the territory to be developed, and in his taking of leases of the lands included therein, and overseeing and directing the operations to be conducted thereon, the defendants agreed with the plaintiff, that they would pay all advancements, assessments and charges which the plaintiff would otherwise have been required to pay by reason of the foregoing written agreement and of his ownership of the aforesaid forty shares of the capital stock of said corporation, and to carry the same for said plaintiff until his share of the profits of the corporation would be sufficient to repay the same.

In pursuance of the undertaking of the defendants to provide for the advancements, assessments and charges that the plaintiff would otherwise have to pay as aforesaid, and in order to pro-

tect the defendants against risk by reason of their said assumption, the plaintiff executed and delivered his promissory note, of date May 12, 1900, to the order of the said Natural Fuel Company, for the sum of $4,000, being the entire par value of his forty shares of stock, payable in four months after date, and transferred his certificate for forty shares of stock to said corporation as collateral security for the payment of said note which was discounted for the benefit of said corporation and the proceeds passed to its credit, with the distinct understanding and agreement, however, between the plaintiff and the defendants, that the same should be renewed at maturity, and as often as might be necessary, and carried by said corporation until the plaintiff's share of the profits should be sufficient to pay the same, or the final renewal thereof.

At the date of the aforesaid written contract, of date July 12, 1899, there was but one available source of supply of natural gas for fuel at the manufactories with which the parties to this suit were connected, as aforesaid, and the primary inducement to said parties in entering into said contract, was the apprehension that the price of the gas at their respective manufactories might be increased, and to the end that the rights and interests of the several corporators might not be impaired or endangered, by the transfer of the holdings of any one of said corporators in said corporation to any outside party or persons, the plaintiff and the several defendants mutually agreed, each with the other, that no one of them would sell or transfer his holdings in said corporation, to any outside party, without first giving to the remaining corporators the right to purchase said holdings at the same price that could be obtained for the same from any other party.

All leases taken by the plaintiff pursuant to the provisions of the aforesaid written agreement have been conveyed and transferred by the plaintiff to the aforesaid corporation, and, prior to June 15, 1900, three wells were contracted for by the plaintiff and located and drilled under his supervision and direction, all of which proved to be producers of gas in paying quantities; and, in the taking of said leases, the location, contracting for and drilling of said wells, and managing the enterprise for the common benefit of himself and the defendants, the plaintiff was occupied for a considerable time and expended

considerable money, and gave to the enterprise the full benefit of his experience, while the defendants contributed nothing to the enterprise other than the money severally advanced by them. No pipes were laid for the conveyance of the production of said wells to the vicinity of Washington, so that the same could be utilized at any of the works with which any of the parties hereto are connected.

In violation of the aforesaid mutual agreement of the parties hereto, the defendants, heretofore, to wit: on or about June 15, 1900, sold and transferred their several holdings of stock of said corporation, with the exception of one share retained by each of said defendants, to an outside party, to wit: William Flinn, who is president of the Western Pennsylvania Gas Company, a corporation engaged in the production and marketing of natural gas, without giving the plaintiff an opportunity to purchase said stock, although he was able and willing, and desired to purchase the same at the prices for which the same was sold to the said Flinn, and so notified the defendants, before their stock was transferred as aforesaid.

In violation of their aforesaid agreement to pay the advancements, assessments and charges the plaintiff would otherwise have been required to pay as aforesaid, and of their agreement to renew and carry the plaintiff's note in manner aforesaid, the defendants, acting in their capacity as directors of said Natural Fuel Company, refused the plaintiff's request to renew said note, but paid the same, and, on October 20, 1900, sold the forty shares of stock of said corporation assigned by the plaintiff, as aforesaid, to said corporation, as collateral security for said note, at the price of $400, thereby leaving the said note, subject to credit for the proceeds of said sale of stock in the hands of said corporation, as evidence of an indebtedness of the plaintiff thereto.

All of the transactions hereinbefore stated occurred at the county of Washington, and within the jurisdiction of this court, and by reason of the aforesaid violations by the defendants, of the agreements aforesaid, the plaintiff has been and is deprived of all the benefits and advantages, gains and profits and property that he would have enjoined if the defendants had faithfully kept their promises and performed their undertakings hereinbefore set forth; wherefore the plaintiff has suffered loss and

damage in a large amount, to wit: the sum of $125,000, for the recovery whereof he brings this suit.

Plaintiff offered his own testimony and that of John J. Ruple to establish the parol contracts referred to in his statement. The court admitted the evidence. The jury returned a verdict for plaintiff for $9,500, subject to the following question of law reserved: "Is there any evidence in this case to support a verdict in favor of the plaintiff which ought to be submitted to the jury?"

The court in an opinion by McIlvaine, P. J., entered judgment for defendants non obstante veredicto. Plaintiff appealed.

*Error assigned* among others was in entering judgment for defendants non obstante veredicto.

*D. F. Patterson* and *John C. Bane*, for appellant.—If a written contract, whether under seal or not, and a contemporaneous verbal contract between the same parties relating to the same subject-matter, may be executed together without collision, they are distinct contracts, each of which retains its own character throughout, and neither is to be treated as merely a part of the other: Prouty v. Kreamer, 199 Pa. 273; Vicary v. Moore, 2 Watts, 457.

Clear and indubitable evidence, to the satisfaction of the court, is required only in cases where the parol evidence calls upon the judge as a chancellor to practically change the provisions of the writing so as to bring it into conformity with the parol alteration: Thomas v. Loose, 114 Pa. 45.

There is no rule of law that prevents parties from entering into two contracts at the same time relating to the same business : one written and one verbal, or both written or both verbal; and both may be enforced if they are not so contradictory as to come into collision: Malone v. Dougherty, 79 Pa. 53; Reno v. Moss, 120 Pa. 49; Honesdale Glass Co. v. Storms, 125 Pa. 268.

*T. F. Birch*, with him *John W.* and *A. Donnan*, for appellee. —The evidence as to the parol contracts was inadmissible: Dickson v. Hartman Mfg. Co., 179 Pa. 343; Naumberg v. Young, 44 N. J. Law, 31; Wodock v. Robinson, 148 Pa. 503;

Van Voorhis v. Rea Bros. & Co., 153 Pa. 19; Wyckoff v. Ferree, 168 Pa. 261; Phila., etc., R. R. Co. v. Conway, 177 Pa. 364.

The second alleged parol contract is not joint: Adriatic Fire Ins. Co. v. Treadwell, 108 U. S. 361; 2 Sup. Ct. Repr. 772; Peckham v. North Parish, 16 Pick. 283; Elliot v. Davis, 2 Bos. & Pull, 339; Lee v. Nixon, 1 Ad. & El. 67; Collins v. Prosser, 1 B. & C. 682; Gibson v. Lupton, 9 Bing. 297.

Evidence of verbal cotemporaneous agreements affecting the rights of the parties to the written contract are not admissible unless there is an averment of fraud or mistake or of some act done by the other parties to the contract which prevented their incorporation in the writing: Wodock v. Robinson, 148 Pa. 503; Hunter v. McHose, 100 Pa. 38; Jackson v. Payne, 114 Pa. 67; Dickson v. Hartman Mfg. Co., 179 Pa. 348; Leibert v. Heitz, 193 Pa. 590.

OPINION BY MR. JUSTICE BROWN, January 6, 1902:

On July 12, 1899, the appellant and other manufacturers, using natural gas in their plants, entered into the following agreement, for the purpose of protecting themselves against an increased price for the same, which they feared would be charged by a combination of the competing companies that were supplying it to manufacturers in the borough of Washington: "An agreement made and entered into this twelfth day of July, 1899, by and between the following named persons, to wit: Wm. P. Tyler, R. J. Beatty, A. B. Paxton, James E. Duncan, J. W. Paxton, W. H. Griffiths and J. B. R. Streator. In consideration of the conditions hereinafter to be performed, hereby agree to form themselves, into a company for the purpose of leasing lands for oil and gas, and in case sufficient land can be procured of contiguous territory to at once proceed to drill a well thereon. All leases are to be taken in the name of J. B. R. Streator and held by him in trust for the balance of the above named parties. The expense of taking such leases and drilling such well or wells shall be paid equally by the above named parties to the said J. B. R. Streator (who shall contract for the above well) at such times as shall be necessary to keep said work moving. In case gas is found in paying quantities the above named parties hereby agree to have said company incorporated under the laws

of the state of Pennsylvania as a natural gas company with sufficient capital to drill additional wells, lay lines, and operate said company.   At which time the said J. B. R. Streator hereby agrees to convey all of the leases taken for said above-named parties to the corporation formed under this agreement, and it is also further agreed that each of the parties named aforesaid shall have an equal interest in said company, and that all gas furnished to the establishment operated or controlled by any of the above-named parties shall be furnished to each at an equal and uniform rate.

" Witness our hands and seals the day and year above written.

|  |  |
|---|---|
| " WM. P. TYLER, | [Seal.] |
| " R. J. BEATTY, | [Seal.] |
| " A. B. PAXTON, | [Seal.] |
| " JAMES E. DUNCAN, | [Seal.] |
| " J. W. PAXTON, | [Seal.] |
| " WM. H. GRIFFITHS, | [Seal.] |
| " J. B. R. STREATOR. | [Seal.] |

After the execution of this agreement, H. B. Duncan, one of the appellees, became the substitute of James E. Duncan in it, and the suit of the appellant is against him and the other parties to it.   The agreement, on its face, is complete and unambiguous; its terms are couched in no uncertain words.   The damages which the appellant claims, resulted from no breach by the appellees of what they therein covenanted; but he asks that they pay him for losses which he alleges he sustained through their failure to perform two certain parol promises or agreements, made contemporaneously with the execution of the written one.   The testimony of the appellant and of Ruple, the witness upon whom he relies for corroboration, is, that these two parol agreements were discussed and entered into by the parties just before and at the very time the written one was executed.   They are not agreements made subsequently to the written contract, but, as proven by the appellant, were made contemporaneously with it.   As set forth in the statement filed, they are, first : " In consideration of the plaintiff giving to the other corporators the benefit of his experience in the production and marketing of natural gas, and in the location by him of the territory to be developed, and in his taking of leases of

the lands included therein, and overseeing and directing the operations to be conducted thereon, the defendants agreed with the plaintiff, that they would pay all advancements, assessments and charges which the plaintiff would otherwise have been required to pay by reason of the foregoing written agreement and of his ownership of the aforesaid forty shares of the capital stock of said corporation, and to carry the same for said plaintiff until his share of the profits of the corporation would be sufficient to repay the same ; " and, secondly : " At the date of the aforesaid written contract of date July 12, 1899, there was but one available source of supply of natural gas for fuel at the manufactories with which the parties to this suit were connected, as aforesaid, and the primary inducement to said parties in entering into said contract, was the apprehension that the price of the gas at their respective manufactories might be increased, and to the end that the rights and interests of the several corporators might not be impaired or endangered, by the transfer of the holdings of any one of said corporators in said corporation to any outside party or persons, the plaintiff and the several defendants mutually agreed, each with the other, that no one of them would sell or transfer his holdings in said corporation, to any outside party, without first giving to the remaining corporators the right to purchase said holdings at the same price that could be obtained for the same from any other party."

In the first parol agreement declared upon, the appellant distinctly recognizes the written one and his liability, as therein set forth, to bear equally with the other parties to it " all advancements, assessments and charges " which might be incurred in carrying out the purpose of the company, and which necessarily involved the liability to take and pay for the stock of the corporation to be formed.   In the face of this written agreement, he not only denies the liability which it imposes, and he assumed under his own seal, but insists that those who entered into it with him must pay him damages for their breach of a contemporaneous parol agreement, expressly contradictory of it, so far as it relates to him.   This first alleged parol promise is in plainest contravention of the terms of the written instrument, by which Streator, who now says he was to pay no assessment or charges, agreed that he would pay whatever the others would pay and bear whatever they would bear.   There is neither

allegation nor proof that, even if this contemporaneous parol agreement was made, it was omitted from the written one by fraud, accident or mistake. The court below, however, admitted the evidence offered in support of it, and the point reserved was, whether there was " any evidence in this case to support a verdict in favor of the plaintiff which ought to be submitted to the jury." We are, therefore, not to determine whether the testimony offered in support of the first alleged parol agreement was properly received, but whether the court, having admitted it, subsequently committed error in regarding it as no evidence in support of appellant's claim. In other words, even though the testimony admitted ought to have been rejected, because there was neither allegation nor proof that it had been omitted from the written one through fraud, accident or mistake, the simple question is, whether the court, having received it, properly regarded it afterwards as no evidence in support of plaintiff's claim and did not err in entering judgment in favor of the defendants non obstante veredicto.

The first alleged parol agreement was, as already stated, not made subsequently to the written one, but, according to the plaintiff, and the only witness called in support of it, was entered into contemporaneously with the written one, and its effect is not only to vary and change the latter, but to flatly contradict it. What was said by the lower court in Wodock v. Robinson (THAYER, P. J.), 148 Pa. 503, adopted by us then, can well be repeated now: " The alleged promise is, therefore, in flat contradiction of the terms of the instrument signed and sealed by the parties. . . . It is as true now as it ever was, and is a rule too firmly rooted in justice and honesty to be easily eradicated from any system of wise laws, that all negotiations, all conversations, all oral promises, all verbal agreements, are forever merged in, superseded and extinguished by, the sealed instrument which is the final outcome and result of the bargaining of the parties. . . . Manent litterae scriptae is still the rule. The written instrument shall stand as the sole exponent of the minds of the parties. If it were not for this rule, no man would be able to protect himself by the most solemn forms and attestations against falsehood, misrepresentation and perjury. In this matter the common law and the civil law are fully agreed, for contra scriptum testimonium non scriptum testimonium non

fertur, is the language of the code : Cod. b. IV., tit. 20. The cases upon this subject are myriad." Of these myriad cases we need hardly refer even to the following : Hunter & Springer v. McHose, 100 Pa. 38, Jackson v. Payne, 114 Pa. 67, and Eberle et al. v. Bonafon's Exrs. et al., 17 W. N. C. 335. As the effect of the alleged parol contract or agreement was to vary and change the written one, the proof in support of it, proper to be received, ought to have been clear, precise and indubitable : Juniata Bldg. Asso. v. Hetzel, 103 Pa. 507 ; Phillips v. Meily, 106 Pa. 536 ; Thomas & Sons v. Seaman & Co., 114 Pa. 35 ; Honesdale Glass Co. v. Storms, 125 Pa. 268 ; Ferguson v. Rafferty, 128 Pa. 337. No such proof was submitted. The terms of the alleged parol agreement are neither definite nor explicit, and the proof that any such agreement was made is vague and uncertain. Whether it was made depended entirely upon the testimony of Streator and Ruple, the uncertainty and insufficiency of which the learned judge below has clearly pointed out in his opinion entering judgment for the defendants, and we need not here discuss it. It is sufficient for us to say that having reviewed it, it is not of that clear, precise and indubitable character that alone would justify a chancellor in reforming the written agreement.

What we have said as to the testimony offered in support of the first parol agreement may be properly repeated as to the second ; but, as to it, it is clear that even if the proof of it was sufficient, there could be no recovery in this joint action against the alleged parties to it. As set forth in plaintiff's statement, it is manifestly a several contract, and cannot possibly be construed as a joint undertaking. Each individual, for himself, gave an option to any one of the others to purchase his stock ; but he did not undertake to jointly obligate himself with anyone else. This is so plain that no discussion can make it clearer. The language of the alleged agreement is, that Streator and each of the other parties agreed " each with the other, that no one of them would sell or transfer his holdings in said corporation to any outside party, without first giving to the remaining corporators the right to purchase said holdings at the same price that could be obtained for the same from any other party." But, even if this second agreement could be tortured into one of joint liability, the plaintiff could not recover. The

agreement, if entered into, was nothing more than a contract by the parties to it as to what they ought to do for the accomplishment of the end that they had in view in forming the combination. The purpose of the combination and of the corporation, subsequently formed, was to obtain cheaper fuel for the several industrial establishments represented by the parties to the agreement; and, if it was agreed that the members of the new corporation should not sell their stock to outside parties until those remaining in the company should have an opportunity to buy at the price offered, the agreement was not made for the purpose of enabling the individual members to make gain or profit in buying the stock, but for the sole purpose that the new combination or corporation should not get into the control of persons who would thwart the manufacturing firms in their purpose to obtain cheaper gas. The manifest and only purpose of the combination was to guard against imposition and an increased price for gas at the hands of the combined competing companies, and, as the individual parties to this alleged second agreement in selling their respective holdings, did so only under an assurance that the very purpose for which they had become associated would be carried out, and that they would not be compelled to pay more than seven cents per thousand cubic feet for gas, no conceivable damage was done to the plaintiff, even if the contract was joint, and nothing was done by the parties to it for which he can recover.

The learned judge below was clearly right in stating that the motion for a compulsory nonsuit should have been allowed, and the judgment ultimately entered in favor of the defendants, non obstante veredicto, after the plaintiff had been fully heard and evidence had been received that ought to have been rejected, is now affirmed.