## Kellner, Executor, v. Stahl.

*Trusts and trustees—Resulting trust—Purchase of decedent's real estate—Mortgage.*

1. Where a woman dies seized of real estate and apparently intestate, and three brothers are declared her next of kin by proceedings in the Orphans' Court, and over three years after her death one of the brothers purchases, without knowledge of an existing will, his brothers' share with the proceeds of a mortgage on the real estate executed by himself, he cannot, at the suit of the executor of a subsequently discovered will containing a direction to sell real estate, be declared a trustee under a resulting trust of any interest in the two-thirds share of the real estate which he purchased from his brothers.

2. In such case, it cannot be argued that, as defendant mortgaged the whole property to obtain the purchase money for the two-thirds which he had a right to hold as a *bona fide* purchaser under the Act of April 1, 1909, P. L. 79, one-third of such purchase money belonged to the executor, who had title to the one-third of the real estate which had never vested in defendant, and that, therefore, a resulting trust existed in the executor as to the one-third of the two-thirds interest in the real estate.

3. Nor can it be argued that when defendant mortgaged the entire property for the purchase money, he received and held one-third of that sum as trustee for the executor, who held under the power of sale the one-third that had been claimed by defendant, but which never in fact had vested in him.

4. As defendant gave his own bond to accompany the mortgage, the money obtained was his own and none of it was the money of the estate as to which a resulting trust would apply.

5. A resulting trust through the payment of purchase money will not be declared in favor of one who has not paid the price or a portion of it with his own money.

Bill in equity to declare a resulting trust in real estate. C. P. No. 2, Phila. Co., Dec. T., 1923, No. 3533.

For the history or prior litigation between the parties, see 3 D. & C. 389 and 7 D. & C. 95.

In 3 D. & C. 389, which was an ejectment, it was declared that Gustav Albert Stahl was entitled under the Act of April 1, 1909, P. L. 79, to hold as a *bona fide* purchaser the two-thirds interest in the real estate which he had bought from his brothers more than three years after the death of the decedent and before the will was discovered, but as to the other third he had no title. Under the will of the deceased the executor, Kellner, was given a binding direction to sell real estate. He accordingly recovered in the ejectment the one-third interest claimed by Stahl.

*Francis V. Godfrey* and *James R. Wilson,* for plaintiff.

*John W. Speckman* and *Frederick J. Knaus,* for defendant.

LEWIS, J., May 20, 1926.—The facts in this case have been fairly well ironed out by much litigation between the same parties. Aside from proceedings in the Orphans' Court, there have been in this court an action of ejectment (Kellner, Executor, v. Stahl, 3 D. & C. 389), resulting in a directed verdict for plaintiff for one-third of the real estate involved and for the defendant as to an undivided two-thirds interest; and a bill for partition brought by the same plaintiff (Kellner, Executor, v. Stahl, 7 D. & C. 95), resulting in a decree directing partition and ordering a reference to a master for that purpose. This present proceeding, reference to which is made in the last-cited case in number 20 of the findings of fact, was instituted by a bill in equity praying that defendant be declared, as to a certain interest in the same real estate, a trustee for the plaintiff as executor, and be directed to account for the rents, issues and profits of said interest and to convey said interest to plaintiff. Although substantially all of the facts out of which it is alleged

the resulting trust arose have been found and set forth in the earlier opinion of this court in 7 D. & C. 95, we have, for purposes of convenience and that the equity rules might be strictly complied with, upon the bill, answer and testimony, made the following

### Findings of fact.

1. Mary Maier, the owner of premises 1208 Palmer Street and 446-458 Flora Street, died July 9, 1913.

2. Mary Maier had made and published a last will and testament in writing, dated Jan. 30, 1908, but said will was not found until the year 1920.

3. As a result of proceedings in the Orphans' Court, three nephews of Mary Maier, namely, K. F. Stahl, J. W. Stahl and the defendant, Gustav Albert Stahl, brothers, were declared to be her heirs-at-law and put in possession of her real estate shortly after her death and before the will was found.

4. In 1915, while still in ignorance of the existence of Mary Maier's will, the defendant, Gustav Albert Stahl, in good faith purchased the undivided two-thirds interest of his two brothers in the real estate for a consideration of $9000.

5. Simultaneously with the execution and delivery of the deed by defendant's brothers of their two-thirds interest to him, defendant executed a mortgage of the same premises, inter alia, to the Philadelphia Company for Guaranteeing Mortgages in the principal sum of $9000, as security for defendant's personal bond of $18,000, which in turn was given to secure a loan to him of $9000. All of the money realized by defendant upon the said mortgage, certain deductions having been made from the full sum, was paid by him to his two brothers on account of the purchase of their two-thirds interest.

6. Defendant had previously, out of his own money, paid a few hundred dollars to his brothers toward the said purchase price.

7. On Aug. 30, 1915, a little more than a month after the execution of the first mortgage, the defendant mortgaged the said premises, inter alia, to the Constatter Building Association to secure payment of the sum of $5000.

8. The will of Mary Maier was found in 1920 and duly probated on April 14th of that year. In it the testatrix, after bequeathing a number of legacies, directed her executors to sell the real estate involved here.

9. Title to one-third of the premises in question is and has been, since Mary Maier's death, in the plaintiff as executor.

### Conclusions of law.

1. The money with which defendant purchased his brothers' interest in the real estate was his own money, in which plaintiff had no interest as cestui que trust or otherwise.

2. The legal title was put in the one who paid the consideration, hence no trust resulted from payment of the purchase money.

3. A resulting trust in favor of plaintiff did not arise as to any portion of the two-thirds interest in the premises purchased by the defendant.

4. The bill should be dismissed.

### Discussion.

As sustaining the contention that there exists a resulting trust in favor of plaintiff, two rules of law are advanced. First, that where a purchaser of real estate pays the purchase money but title is taken in the name of another (subject to the qualification not mentioned by plaintiff that there be no such relationship between them as husband and wife or parent and child), there is a resulting trust in favor of the purchaser. The application of this principle is sought by reasoning that, since title to one-third of the real estate was

in plaintiff, it follows that one-third of the mortgage money realized from the whole property belonged to plaintiff, and that when defendant made use of this mortgage money to purchase the two-thirds interest of his brothers, a trust in favor of plaintiff resulted as to one-third of the two-thirds interest because such portion was bought with plaintiff's money. The second rule of law relied on is that a trust results in favor of the beneficiary when a trustee or other fiduciary buys property with trust funds but takes title in his own name, the position being that when defendant mortgaged the entire property for $9000 he received and held one-third of that sum as trustee for plaintiff.

Defendant replies that these legal principles have no application, for the reason that the money used by defendant to purchase the interest of his brothers was his own money, even if borrowed, the fact that he had mortgaged the entire property, including plaintiff's one-third, as collateral security for the loan being held immaterial. Defendant gave his own bond for the full amount, on which bond he alone became, and still is, liable.

It is conceded, we think, that the nub of this controversy is to be found in the answer to the question as to the ownership of the money raised by the mortgage of the premises. Did it belong partly to the plaintiff and partly to the defendant because of the fact that, unknown to all concerned at that time, title to one-third of the property was in the plaintiff as executor? Or, on the other hand, was the money the defendant's alone, despite the fact that, in obtaining it, he had mortgaged as security plaintiff's one-third interest as well as the two-thirds interest he had purchased from his brothers? The legal consequences flowing from the answers to these questions are fixed; the main problem is to find the correct answers to them.

Much stress was laid upon the contention that the answer filed by defendant to the bill insufficiently denied the averment that the loan of $9000 to defendant was made solely on the security of the premises. We think the denial was sufficient, but the fact seems rather immaterial. It is not denied, and indeed is a fact, that defendant gave his personal bond, conditioned for the payment of $9000. There is no provision limiting the collection of the debt to the mortgaged premises. It would be necessary, it seems to us, to overlook entirely the nature of the mortgage transaction to say that the loan was made entirely and solely on the security of the property. "The presumption is that the security of both the bond and mortgage was relied on:" Juniata B. & L. Ass'n v. Hetzel, 103 Pa. 507. Whether we regard a mortgage as a conveyance of the legal title or as the giving only of a lien, the fact remains that the debt is the principal thing and the mortgage is security to be used mainly for the purpose of collecting it. The debt is evidenced by the bond, which is the primary obligation.

Plaintiff argues that in reality the loan was made only because of the mortgage, and that Stahl's personal responsibility was involved in no way whatsoever "except as it might be by law" (which exception seems of some importance to us) ; plaintiff then asks whether equity will "look through the transaction at its substance" and not "be bound by the form without substance." To this there are two replies. In the first place, it would make no difference if the loan had been made solely on the security of the mortgaged premises, for it would not follow that, because one-third of the property belonged to plaintiff, necessarily one-third of the mortgage loan of $9000 became plaintiff's as resulting from the use of his portion. Defendant unquestionably acted for himself alone and committed no wrong; we are not bound to say that his two-thirds interest did not in itself justify the entire mortgage loan and that the interest of the plaintiff was not given as addi-

Kellner, Executor, *v.* Stahl.

tional or excess security. At least, some slight importance is to be attached to the fact that about a month later the defendant was able to place a second mortgage on the premises for $5000. We can readily imagine circumstances under which we might hold that one-third of the proceeds obtained by one who makes use of premises, a third part of which he does not own, should go to the actual owner; but here is no such case.

This brings us to the second reply to plaintiff's question. Defendant and his two brothers had been put into possession of this real estate after proceedings in the Orphans' Court. Two years had elapsed since the death of the supposed intestate. Not knowing of the existence of a will and in perfect good faith, the defendant arranged to purchase the share of his two brothers, natives of Austria, for $9000. The testimony regarding the payment of this amount, as presented by the plaintiff, was to the effect that defendant had, before the execution of the mortgage, paid "several hundred dollars" to his brothers; money later raised by the mortgage loan was paid over to them upon its receipt. The only testimony as to the amount actually received by defendant in the mortgage transaction is to be found in an extract from the notes of testimony in the Orphans' Court proceedings put in evidence here by plaintiff. Stahl there testified that the amount he received from the mortgage he immediately checked out to his brothers, and it was shown the checks amounted to $5185. It will be seen, therefore, that the testimony is very vague as to the relative sums—as between what was admittedly defendant's own money and that which was raised by the mortgage—which went to make up the purchase price of the two-thirds interest. In the light of such proofs, it would be inequitable that we should arbitrarily declare a trust in favor of plaintiff for one-third of the two-thirds interest merely because he had title to such part of the entire property.

But in our view plaintiff is not entitled to any portion of the two-thirds interest. A resulting trust through the payment of purchase money will not be declared in favor of one unless he has paid the purchase price or a portion of it with his money: Lancaster Trust Co. *v.* Long, 220 Pa. 499; 39 Cyc., 127. Then only a *prima facie* resulting trust arises, for it may be overcome by showing that such was not the intention of the parties: King *v.* King, 281 Pa. 511. Although it is true that a resulting trust may arise where the money is supplied by one person and title is taken by another, without any circumstances of fraud, mistake, concealment or breach of good faith on the part of the person taking title (Lloyd *v.* Woods, 176 Pa. 63), yet a resulting trust will not arise regardless of the surrounding circumstances: Storke *v.* Wayne Brewing Co., 83 Pa. Superior Ct. 333. Here, we think, there could not be said even to be a presumption of a resulting trust. It is our opinion that the money used to purchase the shares in this real estate was defendant's money; he rendered himself personally liable for the full amount of it. That he innocently used plaintiff's interest in the land as security, under the circumstances of this case, should not, and does not, to our minds, change the nature of the ownership of the funds raised by the mortgage. Nor did defendant become a trustee of any part of the funds for plaintiff. We are not satisfied that there is any reason in this case why a court of equity should disregard the true nature of the mortgage transaction.

As the legal title was made to the person who paid the consideration, no trust resulted from payment of the purchase money: Modern Baking Co. *v.* Orringer, 271 Pa. 152; Musselman *v.* Myers, 240 Pa. 5. The last cited case is not altogether without application to the facts here. The plaintiff there sought to have a resulting trust declared in his favor by reason of his pay-

ment of $2500 toward the purchase price of certain real estate, title to which was in defendant. It appeared that at the time plaintiff gave over his money, the defendant was "under agreement" with the owners of the land to purchase it, and had already paid them about $500 on account of the transaction.

Defendant's demurrer to plaintiff's bill was sustained for the reason that he had "acquired an equitable interest in the land before the receipt of the plaintiff's money, [which] was employed only in making a subsequent payment on account of the price. . . . Payment of the·purchase money subsequently is not sufficient to raise a legal implication of a trust." It must be paid at the very inception of the taking of title. While it does not appear defendant herein had a written agreement for the purchase of his brothers' interest, he had arranged to make the purchase and had made certain payments toward the price.

Having reached the conclusions above stated, we deem it unnecessary to discuss the effect of the 6th section of the Act of April 22, 1856, P. L. 533, and the doctrine of *res adjudicata* invoked because of the ejectment proceedings heretofore referred to.

### Decree nisi.

And now, to wit, May 20, 1926, this cause having come on to be heard on bill, answer, replication and proofs, it is ordered, adjudged and decreed that the bill be dismissed, costs to be paid by the estate. The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, the decree *nisi* shall be entered as a final decree by the prothonotary.