THE CHEROKEE & PITTSBURG COAL & MINING COMPANY v. RICHARD WILSON, *as Administrator of the estate of James W. Wilson, deceased.*

1. COAL DUST — *Explosive Element — Judicial Notice.* In an action to recover for injuries resulting from a colliery explosion, the court will not take judicial notice that dry, fine coal dust is a dangerous and explosive element in a coal mine.

2. NEGLIGENCE — *Incompetent Evidence.* Where the negligence alleged was that the defendant company permitted the accumulation of inflammable, combustible and explosive coal dust in the mine, and failed to remove or sprinkle the same, proof that the mine was improperly laid out and constructed, or that proper doors or brattices were not supplied, is incompetent and inadmissible.

3. CONTINUANCE — *Refusal, Error.* There was an agreement between counsel for plaintiff and defendant that the testimony given by certain witnesses in a former case should be transcribed and used as a deposition in the present case, and the party in whose favor the testimony was given relied on the agreement, and did not procure the attendance of the witnesses, but at the trial the testimony of such witnesses, which is material and important, and which, if treated as a deposition taken in this case, would have been competent and admissible, was excluded from consideration upon the objection of the opposing party. The other party then applied for a continuance of the cause on account of the exclusion of the testimony and the inability to otherwise obtain the same, which application was denied. *Held,* Error. Either the testimony should have been received or the continuance granted.

4. ——— *Evidence.* The testimony in the case tending to sustain the charge of negligence as made examined, and *held* to be sufficient to take the case to the jury.

*Error from Crawford District Court.*

THE opinion contains a sufficient statement of the case.

*Geo. R. Peck, A. A. Hurd, Robert Dunlap,* and *O. J. Wood,* for plaintiff in error.

*J. F. McDonald,* and *Hill & McDonald,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Richard Wilson, as administrator of the estate of James W. Wilson, deceased, brings this action against the Cherokee & Pittsburg Coal & Mining Company to recover $10,000 as damages for the benefit of the parents of the deceased, who are his next of kin and heirs at law, for pecuniary loss alleged to have been sustained by them through the death of James W. Wilson, which was alleged to have been caused by the negligence of the company. James W. Wilson was an employé of the company, working in one of its mines, where there was an explosion on November 9, 1888, by reason of which he was killed. The averments of the petition with reference to the negligence were that —

"The defendant knowingly and wilfully permitted inflammable gases to accumulate therein, and permitted large quantities of coal dust, impregnated with sulphur, to accumulate in the passages thereof, and permitted the same to become dry and inflammable and explosive, and so allowed the same to so remain for a long space of time; that by means and reason of the said negligence, carelessness and default of the defendant, an explosion took place in said mine, at about the hour of 5 o'clock P. M. on the 9th day of November, 1888; that said explosion was caused by the negligence of said defendant in negligently permitting the accumulation of combustible and inflammable dust in said mine, which, being communicated with by a blast of powder in the mine, caused a general explosion in the mine; and, among other casualties, caused the death of the plaintiff's intestate, as hereinafter stated; by means and reason whereof the said James W. Wilson was wounded, mangled, bruised, and killed, all without any fault or negligence on the part of the said James W. Wilson, and while he was working in said mine under and by virtue of his said employment; that had it not been for the accumulation of said inflammable and combustible matter in said mine said explosion could not and would not have happened. Said defendant knew, or should have known, in the exercise of ordinary prudence, that the presence and accumulation of said dust was a dangerous element in said mine, but negligently failed to provide reasonable precautions against

danger, by sprinkling said mine or otherwise, or to provide against danger and death by the exercise of any ordinary prudence against permanent injury or death to employés and plaintiff's intestate."

The company answered, denying the allegations of the plaintiff below, and stating that if the deceased was killed at the time and place alleged, his death was caused and materially contributed to by his own negligence. A trial was had in April, 1891, which resulted in a verdict against the company for $5,000. The company complains of this judgment, and insists that the court erred in its rulings on the admission of testimony, and in determining the sufficiency of the evidence offered to sustain the allegations of the petition, and to uphold the verdict that was rendered. It is also asserted that the court committed error in its charge to the jury, and in its rulings on the special questions of fact submitted to and returned by the jury.

It is shown, and not denied, that on November 9, 1888, a general explosion occurred in a mine owned and operated by the company, known as "Frontenac mine No. 2," and that James W. Wilson and other employés engaged in the service of the company were killed in the explosion. The cause of the explosion is the principal subject of controversy in this action. The mine where the explosion occurred is a dry mine, from which bituminous coal was mined. The main hoisting-shaft, which was used for taking coal out of the mine and as a means of ingress and egress of the miners, as well as to conduct the air into the mine, was about 100 feet deep. At the bottom of the shaft was a main entry, extending east and west a distance of about 2,000 feet. The main east entry extended about 1,100 feet from the shaft, and from it were entries running north and south, which extended from about 200 to 700 feet from the main entry into the coal; and from these entries rooms or drifts were turned, running east and west into the coal. The coal was mined by blasting, and the manner of mining it was by drilling a hole into the face of the coal from two to six feet in depth. After drilling the holes, each miner

made his own cartridges, placing as much powder therein as in his judgment was necessary to blow out the coal to the depth of the hole he had drilled. This hole was then tamped or filled with dust, dirt, or clay, or such material as was at hand in the room where the mining was done. These shots or blasts were fired off twice a day, and occurred about noon and five o'clock in the evening of each day. Sometimes the tamping would blow out without breaking the coal. This appears to have been due to improper tamping, or an insufficient quantity of powder, or the manner in which the hole is bored, as well as to the tenacity or solidity of the coal in which the cartridge is placed. When such a shot occurs, the charge shoots directly out of the mouth of the hole, like a shot fired from a gun, and it is known by miners as a "tight, gunning, or blown-out shot." In some cases the flame of these gunning shots would extend a distance of 200 feet from the mouth of the hole. The mining and transportation of the coal through the mine caused considerable coal dust to accumulate in the entries and rooms of the mine, some of which was taken out of the mine by the hoisting-shaft, and to overcome which the mine was sometimes sprinkled.

The theory and claim of the plaintiff below is, that this fine coal dust, which had settled on the walls, floor and ceilings of the mine, and pervaded the atmosphere, was impregnated with sulphur, and was highly inflammable and combustible, and, when combined with the air and the gas liberated from the coal or generated by the flame and heat, is a dangerous explosive; that this fine dust was stirred up and ignited by the concussion and flame of a blown-out shot in the third or fourth north entry, and the blast thus started was accelerated and extended by large volumes of dust burning and expanding as it swept through the entire east part of the mine, until it found relief at the mouth of the shaft, and that the coal dust and flame extended up the main shaft and more than 60 feet above the ground on the outside before the force of the explosion was exhausted.

The company contends that the explosion which occurred,

and by reason of which Wilson was killed, was the accidental or careless igniting of a keg of powder by one of the miners, communicated to other kegs in the mine, thereby causing a general explosion throughout the eastern part of the mine, and passing out of the shaft. It is claimed that the mine is well laid out and properly ventilated; that the coal dust in the mine is not dangerous or explosive, and that if it is, the miners were as well aware of the prevalence and dangerous character of coal dust as were the owners or the managers of the mine.

There is testimony offered, though not very satisfactory, tending to show that the coal dust found in the mine is a dangerous explosive, which largely contributed to the disaster that occurred in the mine on November 9, 1888; and further, that the dangerous character of the dust may be destroyed by the sprinkling of the mine, and that those in control of the mine were aware of the dangerous character of the dust, and that an explosion could be prevented by proper sprinkling, which had been occasionally done, but not for some time previous to the explosion.

The defendant in error presents in his brief the opinions and reports of mining inspectors and others who had investigated the question in regard to the explosive character of coal dust, but their testimony was not taken and their opinions and writings were not brought into the case so that they can be

1. Coal dust— explosive element—judicial notice.

considered by court or jury. If coal dust is an explosive, it is not so universally recognized to be such that the court may take notice of the same without proof. The witnesses who testified in this case, as well as the books, show that it is still an open and unsettled question. For this reason, the testimony of the mining superintendents, inspectors and others who have made a special study and examination of the subject would have been of great value to the court and jury in determining this disputed question. As we have stated, the proof offered by the plaintiff below tends to establish his contention; and although it is contradicted by that offered in behalf of the company, and in some respects is not as satisfactory as it should be upon

which to base a judgment, we cannot say from an examination of the same that the demurrer to the evidence below was erroneously overruled, or that there was error in not directing a verdict in favor of the company. In view of the fact that there must be a reversal and another trial for erroneous rulings, we cannot with propriety enter upon a discussion of the weight or credibility of the evidence, or upon the facts as disclosed in the record now presented in this case. In another trial the testimony may be different, and possibly much fuller and more satisfactory upon the turning-points in the action.

During the course of the trial, the court permitted evidence to go to the jury, over the objection of the plaintiff in error, to the effect that the company had not provided sufficient doors or brattices for the mine. The witnesses Fisher, Wilson and Fox all gave testimony of this character, tending to show that the injury and fatality in the mine were enhanced by the failure of the company to provide suitable doors and brattices between room and room, or between rooms and entries. As 2. Negligence— the issues were formed, this testimony was uninompetent evidence. warranted and prejudicial. It is not claimed or stated in the petition that there was any negligence in laying out, constructing or ventilating the mine. The charge of negligence was, that the company had permitted the accumulation in the mine of dry, inflammable, combustible and explosive coal dust, which it failed to sprinkle or remove, and which, being communicated with by the flame from a powder blast, caused a general explosion. The issue was joined upon this charge of negligence, and it was not subsequently enlarged by any amendment of the pleadings. Proof of negligence with respect to the doors and brattices did not sustain the allegation of negligence that was made, and the admission of the same over the objection of the company was prejudicial error. (*Railway Co. v. Young*, 8 Kas. 658; *Railroad Co. v. Irwin*, 35 id. ·286.)

The company undertook to offer the testimony of Williams, Allen and Braidwood in this case, which had been given in the trial of *Limb v. Coal & Mining Co.*, tried at a former term of

the same court.   Williams and Allen resided in Pueblo, Colorado, and counsel for both parties in this action went out there to take their depositions, but instead of taking the same, and for the purpose of avoiding the expense incident to the taking of the depositions, and for the convenience of counsel, it was agreed by counsel that the testimony of these witnesses which had been given in the Limb case should be transcribed by the official stenographer of the court, and sworn to by him as being a true and correct transcript of the testimony of the witnesses, and when so transcribed and sworn to it should be used in all other cases against the company pending in that court, to the same extent and with like effect, and to be treated as the depositions of said witnesses, subject to the same objections as though they were present and testifying in court.   In pursuance of this agreement, their testimony was transcribed by the official stenographer and duly verified by his oath as being true and correct.   Afterward the whole of the testimony was introduced on the trial of the case of Stoop, administrator, against the company, and the testimony was permitted to be read, in accordance with the terms of the agreement made between counsel.   When the written testimony of Williams was offered in this case, an objection was made to its competency and relevancy, as well as that no proper foundation had been laid for the question, and because the witness had not shown himself to be an expert.   These objections were sustained, except as to some inquiries regarding the map which was used upon the trial.   Upon concluding the reading of the testimony in chief, the plaintiff below objected to the reading of the cross-examination, and asked leave to withdraw the same from the consideration of the jury.   The company objected to the withdrawal of the cross-examination, but the objection was overruled, and no part of the cross-examination was read except that which referred to the map which had been drawn by the witness.   After the court permitted the withdrawal of the cross-examination, and a great part of the testimony of the witnesses Williams and Allen had been excluded from the jury, the defendant made an application for a continuance on

account of the absence of the witnesses, and set forth the same by affidavit, reciting that the company had relied upon the agreement made to use this testimony, and for that reason did not have the personal attendance of these witnesses at the court. It is now contended that the court erred in permitting the withdrawal of the cross-examination, and abused its discretion in overruling the application for a continuance.

It appears, from the testimony offered, that Williams was the mining engineer for this coal company, as well as for various others in Colorado, Kansas, and New Mexico; that shortly after the explosion he had visited the mine and investigated the cause and effects of the explosion. He was interrogated with reference to the condition of the mine after the explosion. It appeared that he had been engaged as a mining engineer and in the mining business for about eight years, and had given attention to explosions and the evidence of the same as indicating their cause, but his testimony with respect to the same was excluded from the jury. If he had been present in person and his testimony had been given, or if his deposition had been taken for use in this case, it is clear that the greater part of that which was excluded would have been competent and admissible. Objections to some of the preliminary inquiries may have been properly sustained, for the reason that the competency of the witness to answer the question had not been shown; but before the examination extended very far his competency to testify fully appeared; and if his deposition had been presented embracing the same questions and answers, a part of the examination in chief and the greater part of the cross-examination should have been admitted. If the plaintiff below did not desire to read the cross-examination of the witness which had been agreed should be treated as a deposition, the company should have been permitted to present the same to the jury. Some of the testimony of Allen in regard to his knowledge of the condition of the mine, and of the effects and cause of the explosion, was improperly excluded, providing his testimony is to be treated as a deposition. He was the general manager of the mine, had experience

in mining coal, and had examined the results of the explosion for the purpose of determining its cause. He was, therefore, qualified to testify on these subjects. But considerable of his testimony in respect to the same was excluded from the jury, and objections made by the plaintiff below to questions asked of the witness by himself were sustained by the court, although they were not made at the time the testimony was actually taken. As the testimony of these witnesses and Braidwood was taken for use in another case, probably the court could not compel the reading of the same in this case over the objections of the plaintiff below; but in view of the agreement which had been made, that the testimony should be received

3. Continuance— and treated as a deposition, and in view of the
refusal, error. fact that it had been so treated in another case, their testimony should have been so treated by the court, or else a continuance should have been granted until the presence of the witnesses could be obtained. In view of the circumstances of the case, the company had a right to rely upon the stipulation which had been made, that the testimony of these witnesses, so far as the same was competent as a deposition, would be available in the present case; and as much of the testimony excluded would have been competent and material if treated as a deposition, the rulings of the court in respect to the same were prejudicially erroneous.

For these errors the judgment of the district court must be reversed, and the cause remanded for a new trial.

All the Justices concurring.