92    89
102   7400

# VIOLA POOR, Respondent, v. W. S. WATSON, Appellant.

### Kansas City Court of Appeals, January 6, 1902.[a]

1. **Mines and Mining: DAMAGE ACT: STATUTORY CONSTRUCTION.** The particular mention of certain things in one statute will withdraw them from the application of the general words of another statute which would likewise embrace them; and the mining statutes giving right of action for certain negligences of mineowners withdraws the same from the operation of the general damage act.

2. ———: **DEATH LOSS: SOLE SURVIVORSHIP: ACTION: WIDOW: CHILDREN.** The mining statute gives the survivorship of action when the minor is killed by reason of the operator's negligence to the widow, if there be one, and children can claim survivorship only where no widow survives or she dies within twelve months, the period limited for bringing the action.

3. ———: **STATUTE: PETITION: DAMAGE ACT.** A petition is compared with section 8802, Revised Statutes 1899, and held to state an action under said section and not an action at common law and under the general damage act.

4. ———: **COAL MINES: GAS: JUDICIAL NOTICE.** Courts will take judicial notice of general knowledge among people and of scientific facts and principles, and consequently that coal mines generate gas.

5. ———: ———: ———: **STATUTORY CONSTRUCTION.** The statute relating to mines and mining itself shows that coal mines are meant to be included in the expression, "all mines generating gas," used in section 8802, Revised Statutes 1899.

6. ———: ———: ———: ———: **FIRE DAMP.** The word "gas" used in said section is not restricted to the explosive gas called "fire damp," but is applicable to all injurious gases generated in a mine.

7. **Parties: PLEADING: DEMURRER: ACTION.** Plaintiff's father was killed in a coal mine leaving his wife and plaintiff surviving

---

[a]Received too late to be placed in chronological order.

him. After six months, the wife not suing, plaintiff brought her action. The defendant did not by demurrer or answer raise the question of a defect of parties. *Held*, plaintiff had no cause of action since the wife survived her father and took the action, and the statute requiring a defect of parties to be raised by demurrer or answer was not applicable.

Appeal from Macon Circuit Court.—*Hon. Nat M. Shelton*, Judge.

REVERSED.

*Dysart & Mitchell* and *Ben Eli Guthrie* for appellant.

(1) For the recovery of a death loss under the mining act and the damage act there is a different provision, both as to the amount of damage and the parties entitled to sue. Sec. 8820, R. S. 1899; Sec. 2864, R. S. 1899; Sutherland on Statutory Construction, section 217; State v. Cornwall, 53 Neb. 556; Coal Co. v. Taylor, 81 Ill. 590; Boyd v. Coal Co., 25 Ind. App. 157. (2) If the death of Mr. Poor was occasioned by a violation of any of the provisions of article 2 of the mining act, or by the omission of any of the duties imposed by said article, or if such violations or omissions contributed to his death, then, under section 8820, a right of action accrued to the living widow, and she was not limited to six months, but had one whole year in which to commence her suit; nor could she be ousted of her right of action by any procedure taken by the guardian of her minor child. Durant v. Lexington Coal Mining Co., 97 Mo. 62, 65, 66. (3) The petition clearly alleges a violation of said article 2 of the mining act, and an omission of duties imposed by said article. R. S. 1899, sec. 8802. It would seem that if the deceased left a widow, no other party would have a right to sue at any time, or under any circumstances. Whether the lineal descendant could sue after the death of the mother within one year, it is

not necessary to inquire. But so long as the widow is living at least, she is certainly the sole legal claimant of this death loss. Durant v. Lexington Coal Mining Co., supra. (4) The proper construction of section 8820 is not difficult. It means that if there be a widow, she is the sole claimant; if no widow, then the lineal heirs; if no lineal heirs, then adopted children; if no adopted children, then persons dependent on the deceased for a support, at and before the time of his death. The rights of the parties are fixed by the order in which they are named, the first named, if in existence, being the sole claimant. Hamman v. Coke Co., 156 Mo. 232, 240, 242; Beard v. Skeldon, 113 Ill. 584, 586. (5) A petition that shows on its face no right of action by the plaintiff against the defendant, fails to state facts sufficient to constitute a cause of action. The rule that a misjoinder or defect of parties is waived unless taken advantage of by demurrer or answer, does not apply in such case. In all the cases arising under the last-mentioned rule, the defendant was in some way, or to some extent, liable to the plaintiff. Steinman v. Strimple, 29 Mo. App. 478, 481-484; Keller v. St. Louis, 152 Mo. 596; Boyd v. Coal Co., 25 Ind. App. 157, 162-3; Maule Coal Co. v. Partenheimer, 155 Ind. 100, 109; Litchfield Coal Co. v. Taper, 81 Ill. 590, 592; Barker v. Railroad, 91 Mo. 86, 94; Coover v. Moore, 31 Mo. 574; McNamara v. Slavens, 76 Mo. 329. (6) Court will also take judicial notice that coal mines, as a rule, generate gases and that the production of gases is a natural result to be expected and guarded against in all coal mines. As bearing on the above we cite the court to the following Missouri cases where judicial notice has been taken of similar cases: That volatile oil subjected to heat will produce gases (Fuchs v. St. Louis, 133 Mo. 169); that coal oil is inflammable (State v. Hayes, 78 Mo. 318); that Texas cattle have an infection (Grimes v. Eddy, 126 Mo. 179); that scientific facts and matters of general information do not have to be alleged or proven (State v. Lingle, 128 Mo. 540); that earth under a foundation

will crumble when exposed and unprotected (Obert v. Dunn, 140 Mo. 486); that overflows produce disease (Morrison v. Morey, 146 Mo. 563); that natural forces in the art of photography produce certain results (Baustin v. Young, 152 Mo. 317, 323). From other States we note a few cases: That natural gas does not explode spontaneously (McGahan v. Gas Co., 140 Ind. 335; s. c. 49 Am. St. Rep. 199, 200); "Yellows" is a disease among trees resulting in premature death (State v. Main, 69 Conn. 123; s. c. 61 Am. St. Rep. 41); of the general business of life and of the manner and rules of conducting it (Railroad v. Jenkins, 174 Ill. 397; s. c. 66 Am. St. Rep. 296, 297).

*Dan R. Hughes* and *R. W. Barrow* for respondent.

(1) Section 2866 provided that all damages accruing under section 2865 shall be sued for and recovered by the same parties and in the manner as provided in section 2864, etc. It is intended to provide the means by which the children or other representative of deceased, as therein named, may maintain a suit where the death of the injured party was caused by a violation of common-law rights or duties. Proctor v. Railroad, 64 Mo. 112; White v. Maxey, 64 Mo. 552; Elliott v. Railroad, 67 Mo. 272; Stoher v. Railroad, 91 Mo. 509; McPherson v. Railroad, 97 Mo. 253; Gray v. McDonald, 104 Mo. 303, loc. cit. 311; Connor v. Railroad, 59 Mo. 285; Coover v. Moore, 31 Mo. 574; Kennedy v. Burrier, 36 Mo. 128; Boemer v. Lead Co., 69 Mo. App. 601. (2) It is the duty of the master to the servant, under the principles of the common law and without any statutory provisions whatever, to furnish to the servant a safe place in which to work, and to use reasonable care to keep said working place in a safe condition, and these principles apply to the relation of master and servant in the coal mining business just as in any other business. Smith v. Little

Pittsburgh Coal Co., 75 Mo. App. 177; Hamilton v. Rich Hill Mining Co., 108 Mo. 364; DeWeese v. M. I. Mining Co., 54 Mo. App. 477; Aldridge Admr. v. Midland B. F. Co., 78 Mo. 559; Mason v. Fourteen Mining Co., 82 Mo. App. 367; Scott v. Springfield, 81 Mo. App. 312; Dickson v. Railroad, 124 Mo. 140; Halliburton v. Railroad, 58 Mo. App. 29; Monahan v. K. C. Clay & Coal Co., 58 Mo. App. 68; Warner v. Railroad, 62 Mo. App. 184; Huhn v. Railroad, 92 Mo. 440; Reichla v. Gruensfelder, 52 Mo. App. 57.    (3)   It is the common-law duty of the master to use reasonable care in inspecting the machinery, appliances and place, where the servant is required to work, without any statutory provisions, and a failure to do so is negligence.    Dedrick v. Railroad, 21 Mo. App. 433; Bartley v. Trorlicht, 49 Mo. App. 214; Gutridge v. Railroad, 105 Mo. 520; Krampe v. St. L. Brewing Assn., 59 Mo. App. 277; Clowers v. Railroad, 21 Mo. App. 213; Settle v. Railroad, 127 Mo. 336; Huth v. Dohle, 76 Mo. App. 671; Goodrich v. Railroad, 152 Mo. 222.    (4)   Under the prop statute a petition must state that props and timbers were needed, that they were demanded or required by the miners, and that they were not furnished.    Leslie v. Rich Hill Coal M. Co., 110 Mo. 31; Adams v. K. & T. Coal Co., 85 Mo. App. 486.    The statute as to the inspection of mines, "generating gas," and requiring them to be examined every morning, is of the same nature and a petition under it must be governed by the same rules.    (5)   When a defect of parties is apparent upon the face of the petition, it must be taken advantage of by demurrer or it will be waived.    Dodson v. Lomax, 113 Mo. 555; Kerr v. Bell, 44 Mo. 120; Scott-Force Hat Co. v. Hombs, 127 Mo. 392.    Section 602, Revised Statutes 1899, expressly provides that if such defect, if it exist, be not taken advantage of by demurrer or answer it is waived. (6)   When a statute can be construed according to the literal meaning of the words employed, the courts have no right to set aside this literal meaning, but must construe it as it is.

State ex'rel. v. Johnson, 132 Mo. 105; Hicks v. Jamison, 10 Mo. App. 35; Carter v. Soulard, 1 Mo. 576; Cowan v. Jones, 79 Mo. App. 222; State ex rel. v. Railroad, 146 Mo. 155. Hence, in this cause we can not bring a common-law action under the provisions of this section. (7) Section 8802 as to inspection does not apply to all coal mines, but only to mines "generating gas." This rule in no way applies to ordinary or to all mines, but is special by its very terms. State v. Murlin, 137 Mo. 297. (8) Appellant claims this cause should have been brought under section 8820, Revised Statutes 1899, the mining statute. This section provides only for causes of action "for any violation of this article or failure to comply with any of its provisions" and this cause being for a violation of the common-law duty of master and servant and not for any violation of the statute, is not within the terms of the statute and can not be brought under it. It is well settled that where a statute provides for or creates a cause of action, any one who sues under it must bring himself and his cause directly within its terms. McNamara v. Slavens, 76 Mo. 329; Gibbs v. City of Hannibal, 82 Mo. 143; Coover v. Moore, 31 Mo. 574; Oates v. Railroad, 104 Mo. 514; Judson v. Smith, 104 Mo. 61; Brink v. Railroad, 160 Mo. 87. A statute giving a right of action for deaths is in derogation of common law and is strictly construed. Gray v. McDonald, 28 Mo. App. 477; Jackson v. Railroad, 87 Mo. 422.

ELLISON, J.—The plaintiff is the infant only child of Thomas Poor, who was killed in an entryway of defendant's coal mine in Macon county and she, through her next friend, brought this action for damages on account of his death resulting from the negligence of defendant.

The point made on this appeal is as to the sufficiency of the petition to state a cause of action; that is to say, it shows on its face that the cause of action stated does not belong to plaintiff. The particular point made by defendant is this:

The action is founded on the mining statute which gives the survivorship to widows of miners and prescribes a limitation of one year in which the action may be brought, while the petition shows upon its face that deceased left a widow and that the suit was begun by this plaintiff before the year expired in which she might institute the action. The plaintiff meets this position of defendant's by the contention that the action is not under the mining statute but is at common law and that it depends for its survivorship and period of limitation on the general damage statute, which gives the survivorship to the widow if she will sue within six months, and if she does not, then to plaintiff if she will sue after six months and within a year of the death. It is thus seen that the question depends, for its correct solution, on the construction to be placed on the mining law (art. 2, chap. 133, R. S. 1899) in connection with the damage act (secs. 2865 and 2866).

The petition states that plaintiff is the only daughter of deceased. That at his death he left surviving him plaintiff and her mother, the widow of deceased, and that the latter had not instituted an action for his death within six months thereafter and that thereby the action accrued to her. That deceased was engaged in mining for defendant in his coal mine and while eating his dinner in one of the main entryways, he was killed by a rock falling from the roof of the entryway. That he was required to be in said entryway in the performance of his duties. That it was defendant's duty to keep the roofs of the main entryways of such mine in a safe condition and free from loose and dangerous rocks and other material liable to fall or injure his employees. And that it was the duty of defendant to inspect such roofs. The petition then alleges, by appropriate averments, defendant's negligence, as well as the falling of the rock upon deceased whereby he was killed, and prayed damages in the sum of five thousand dollars.

Leaving out of view the mining statute, it is clear that the petition states a cause of action in plaintiff under the

sections of the damage act aforesaid; for section 2865 provides for the survival of actions for death caused by the wrongful act, neglect or default of another; and section 2866 allows damages in such cases not exceeding $5,000, to be sued for and recovered, first, by the husband or wife of the deceased; or, second, if there be no husband or wife or if he or she fails to sue within six months after the death, then the damages may be sued for by the minor child or children; provided the action is brought within one year of the death as limited by section 2868.

But the mining statute provides a right of survivorship for all actions arising under its provisions, as well as a period of limitation and a limit of damages. It enacts that in case of death by the negligence of the mine-owner or operator, a right of action accrues "to the widow of the person killed, his lineal heirs, or adopted children; . . ." And that the action must be brought within one year and that the damages shall not exceed ten thousand dollars. Section 8820, R. S. 1899.

Now it is plain that all rights of action given by the mining statute are made to survive alone by that statute; and that the period of limitation and limit of damages are fixed solely by that statute. While the general damage statute uses the general words, "any wrongful act, neglect or default of another," yet if the particular wrongful acts, negligence or defaults complained of are provided against in the mining statute, then the survivorship provided by that statute, with its attendant period of limitation and limit of damages, must control, and it ousts the general statute from application. For it is a familiar rule of statutory construction often stated by appellate courts of this State that the particular mention of certain things in one statute will withdraw such things from the application of the general words of another statute which would otherwise embrace them. Ruschenberg v. Railroad, 161 Mo. 70, 85; Sutherland on Statutory Construction, sec.

217; Lichfield Coal Co. v. Taylor, 81 Ill. 590; State v. Cornell, 53 Neb. 556.

So that if, as defendant contends, the action is founded on negligent acts of omission provided against in the mining statute, the petition does show on its face that plantiff does not state a case for herself but rather states a cause of action which, at that time, belonged to her mother, since the statute gives her mother the whole period of the limitation in which to bring the action for herself; and that she has the whole of the period was decided in Hamman v. Central Coal Co., 156 Mo. 232. Indeed, when a miner is killed by the negligence of the mining proprietor in the manner specified by the mining statute, that statute gives the *sole* survivorship to the widow, if there be one; for, as just stated, she has the whole period of the life of the action in which to bring it. Children can claim survivorship only in cases where no widow survives the deceased, or, if one, where she dies within the period limited for bringing the action.

So, then, we come to the question whether the negligence charged by plaintiff against defendant is provided against in the mining statute. We are satisfied that it is. The particular section applicable is as follows: "All mines generating gas in which men are employed shall be examined every morning by a practical and duly authorized agent of the proprietor, to determine whether there are any dangerous accumulations of gas, or lack of proper ventilation, or obstructions to roadways, or any other dangerous conditions; and no person shall be allowed to enter the mine until the examiner shall have reported all the conditions safe for beginning work. Such examiner shall make a daily record of the condition of the mine, in a book kept for that purpose, which shall be open at all times to the examination of the inspector. The currents of air in mines shall be so split as to give a separate current to at least every fifty men at work, and the mine inspector shall

Vol 92 app—7

have discretion to order a separate current for a smaller number of men, if special conditions render it necessary." Sec. 8802, R. S. 1899.

This section requires a daily inspection of the mine, and the petition charges that none was had of the roof of the main entry in question. The statute requires that there shall not be obstructions to roadways, or any other dangerous conditions in the mine. The petition, while not using the words of the statute in this respect, does employ words which mean the same thing. It charges that the defendant did not keep the roof of the main entryway, in which deceased was killed, in safe condition. We regard an entryway and a roadway, in this connection, as the same thing. And so we regard loose rock in the roof of the entryway as obstructions to the entry in the sense of the statute. And in addition to this, it is certain that the matters charged by the petition make one of the "dangerous conditions," named by the statute. Looking at the comprehensive provisions of the mining statute, as a whole, we think it must be admitted that it was intended to cover facts stated in the petition and to grant survivorship to an action on such facts.

But plaintiff urges that the statute quoted does not refer to coal mines; that coal mines are not included in the descriptive words "all mines generating gas." In our opinion, the courts should take judicial notice that coal mines generate gas and that therefore the statutory expression, "all mines generating gas," includes coal mines.

Judicial notice should be taken of things which are of general knowledge among people of ordinary information. They will take judicial notice of recognized scientific facts and principles without the necessity of evidence and may do so of their own motion. Brown v. Piper, 91 U. S. 37. They will take judicial notice that volatile oil subjected to heat will produce gases (Fuchs v. St. Louis, 133 Mo. 168); that coal oil is inflammable (State v. Hayes, 78 Mo. 307); that such an ex-

plosive as dynamite is dangerous (Norwalk Gas Co. v. Norwalk, 63 Conn. 495); that natural gas is inflammable and explosive (Jamison v. Gas Co., 128 Ind. 555). It is now common information that coal mines contain gases which are a menace to health and life and that they are a source of anxiety to the lawmakers as well as to the parties directly concerned. We regard the adjudications just cited as authority for and as illustrative of our holding.

But aside from the consideration just stated, we think the statute itself shows that coal mines were meant to be included in the statutory expression above quoted. In other words, the statute clearly recognizes that coal mines generate gases. Thus, section 8801 provides for certain ventilation and a certain volume of air to be forced and circulated to the face of every working place throughout a coal mine so that such mine shall be free from powder smoke "*and gases of every kind.*" Section 8803, provides that it shall be unlawful for any operator of a coal mine to employ any but experienced persons under ground whose duties may involve contact with "inflammable gases." In 1891, it was decided by the Supreme Court of Kansas that it was not then sufficiently recognized and conceded by experts and by the books that "coal dust was an explosive," as that judicial notice could be taken of it. Coal Co. v. Wilson, 47 Kan. 460. But section 8826, of the statute under consideration now, in effect, declares that dry and dusty coal mines discharge "carbonated hydrogen gas." More evidence of the meaning and contemplation of the statute could be cited from the language used therein; but it is sufficient to say that the various rules of protection for the coal miner, laid down in the different portions of this statute, and the apparent solicitude of the Legislature for the welfare of the miner which is shown throughout the act, disclose a legislative affirmation that coal mines do generate gas, and, hence, we have no hesitation in holding that the phrase in section

8802 aforesaid, "all mines generating gas," includes coal mines.

But in additional briefs filed by leave, a position is taken not altogether consistent with former contentions. Plaintiff now concedes that all coal mines do generate gas, but the point is now earnestly made that the statutory expression aforesaid, "all mines generating gas" means only an explosive gas called "fire damp." This construction is without reason and it is not only in the face of the words of the statute, but it is opposed by the history of the present enactment. The statute, as it now reads, was enacted in 1895. Prior to that, in the revision of 1889, section 7064, it read, that the mine owner should maintain a sufficient amount of ventilation, "which shall be forced and circulated to the face of every working place throughout the mine, so that said mine shall be free from standing gas of whatsoever kind; and in all mines where fire damp is generated, every working place where such fire damp is known to exist shall be examined every morning with a safety lamp by a competent person, before any other persons are allowed to enter." In 1895, the statute was changed to its present reading, by omitting the *restriction* to one kind of gas, and such general language substituted as necessarily embraces all noxious gases whether explosive or not. There are gases suddenly fatal to the life of the miner which are not known and designated as "fire damp," while there are others, which, while not so deadly, are yet ruinous to health; and the breadth of the language in the present statute is but the growth of the humane sentiment of protection which the spirit of the present age has demanded of the Legislature. When the generality of the language of a statute manifestly justifies its application to all of a number of injurious gases generated in a mine, why should it be restricted to one of those?

We are cited to the opinion of mine inspectors that all coal mines do not generate the particular gas known as fire damp; and to their statement that fire damp was what they

understand the Legislature to have meant by the statute aforesaid. But we have already shown that while the statute was once restricted to that particular gas, the injustice and unreasonableness of such restriction was recognized by the Legislature when that body withdrew the restrictive words and put in their stead other general words obviously embracing all gases, the presence of which would thwart the object of the law, viz., the life and health of the miner.

It is finally suggested by plaintiff that the objection taken by defendant really amounts to a mere defect of parties plaintiff and that under the statute (sec. 602, R. S. 1899), as this was not taken advantage of by demurrer or answer, it should be considered waived. The point is not well taken. The statute does not apply to a case like this. Here no cause of action whatever is stated in the plaintiff, and the cause of action stated is one in which the plaintiff can not have any right or concern. No valid judgment could be rendered for plaintiff under any circumstances on the cause of action stated. Steinman v. Strimple, 29 Mo. App. 478. In Keller v. St. Louis, 152 Mo. 596, a child whose mother and father were living but were divorced, was injured and the suit was brought by the mother, in whose custody the child was, for damages. The court held, in an opinion by Judge Brace, that the father being alive should have instituted the suit; that the right of action was in him and the judgment in favor of the mother could not stand. See, also, Barker v. Railroad, 91 Mo. 86, and cases cited.

From the foregoing considerations we are compelled to reverse the judgment herein, and it is so ordered. All concur.