BOLEN-DARNALL COAL CO. v. WILLIAMS.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1908.)

No. 2,717.

1. TRIAL (§ 242*)—INSTRUCTIONS—FAILURE TO INSTRUCT ON MATERIAL ISSUES.
Instructions which, taken as a whole, are calculated to mislead the jury as to the character of the evidence necessary to prove the issue on one side, as by failing to present with sufficient distinctness a material fact which may have a controlling effect, are erroneous.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 572, 573; Dec. Dig. § 242.*]

2. TRIAL (§ 253*)—INSTRUCTIONS—MISLEADING INSTRUCTIONS.
In an action in the Indian Territory by a coal miner against the mining company to recover for a personal injury, it was alleged that the injury was caused by the negligence of defendant in permitting great quantities of inflammable coal dust to accumulate in the mine in violation of Act July 1, 1902, c. 1356, 32 Stat. 631, which provides that "whenever it is practicable to do so the entries, rooms, and all openings being operated in coal mines shall be kept well dampened with water to cause the coal dust to settle, and that when water is not obtainable at reasonable cost for this purpose accumulations of dust shall be taken out of the mine. * * *" Held, that substantial evidence introduced by defendant tending to show that the mine was kept dampened with water and

that the slope in which the injury occurred was at the time well dampened raised a material issue, since in such case defendant was not negligent under the statute in permitting dust to accumulate, and that instructions which ignored such issue and permitted plaintiff to recover on a finding alone that dust was permitted to accumulate and that its explosion caused the injury were misleading and erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–617; Dec. Dig. § 253.*]

3. MASTER AND SERVANT (§ 205*)—CONDITION OF MINE—ASSUMPTION OF RISKS.
The law imposes upon a mine owner the duty of exercising reasonable care to see that the mine is in a reasonably safe condition for an employé to work therein, and does not require the employé to exercise care to discover its condition before going to his work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. § 205.*]

4. TRIAL (§ 237*)—INSTRUCTIONS—REFUSAL OF REQUESTS.
A requested instruction in an action based on negligence that the negligence of defendant must be "absolutely" shown to warrant a recovery was properly refused as stating an excessive measure of proof.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 548; Dec. Dig. § 237.*]

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 104 S. W. 867.

S. Guerrier, for plaintiff in error.

Harley & Lewis, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is an action for personal injury resulting from an alleged explosion in a coal mine, with verdict and judgment for the plaintiff below for $12,500. This judgment was affirmed by the Court of Appeals of the Indian Territory.

The defendant in error (hereinafter designated the plaintiff) was working in the east entry on the seventh level of the mine. Just after he had fired his last charge for the day and was passing out up the level, a flame came up from below, overtaking and burning him severely. There are multiplied acts of negligence imputed in the petition to the defendant company as the cause of the injury. As it is apparent from the trial, the charge of the court and the briefs of the respective counsel, that the recovery was had upon one specified ground, it would subserve no practical end to discuss other allegations of the petition. This specification is as follows:

"That defendant company carelessly and negligently permitted great quantities of inflammable coal dust to accumulate on the main slope in the said entry and in the seventh east entry, and at and near the face of the main slope in said mine, which said inflammable coal dust became ignited, in some manner to plaintiff unknown, causing plaintiff to receive the injuries hereinbefore and hereinafter set out."

In support of its action the plaintiff below invoked the act of Congress approved July 1, 1902, c. 1356, 32 Stat. pp. 631, 632, which declares that:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Wherever it is practicable to do so, the entries, rooms, and all openings being operated in coal mines, shall be kept well dampened with water to cause the coal dust to settle, and that when water is not obtainable at reasonable cost for this purpose accumulations of dust shall be taken out of the mine, and shall not be deposited in way places in the mine where it would be again distributed in the atmosphere by the ventilating currents."

As the evidence showed, without dispute, that there was abundant water obtainable for the purpose indicated in the foregoing statute, and that the defendant did use the water therefor, the natural meaning of the statute is that although there may have been accumulations of dust in said mine, yet if the owner kept the same well dampened with water to cause the dust to settle, it had performed its duty under the statute, and was not liable from the mere fact of the accumulation of coal dust in the mine.

In Cherokee & P. Coal & M. Co. v. Wilson, 47 Kan. 460, 28 Pac. 178, the court said:

"The explosiveness of coal dust is an open and unsettled question, and, in an action to recover for injuries resulting in a coal mine, the court will not take judicial notice that dry, fine coal dust is a dangerous and explosive element."

It being a disputed and open question among expert miners and in scientific treatise on the subject whether or not coal dust in a mine is inflammable, Congress, without determining such question, evidently intended by the foregoing enactment to minimize the danger from the presence of such accumulated dust by requiring its removal, or that the mine owner should keep it well dampened with water to cause the dust to settle; the thought doubtless being that the danger of ignition or the deleterious effect of such dust was to be apprehended from the particles being distributed in the atmosphere, and that this could be measurably prevented by dampening the deposits of such dust.

It was, therefore, an important issue of fact in this case, after proof tending to show that there was an accumulation of coal dust along the tracks of the tramway and on the slope—a condition inseparable from such mining operations—whether or not the mine owner observed the statute in respect of dampening the dust with water. The evidence showed that the water supply was near the fourth level of the mine. It was taken therefrom in a box on a water slide containing about 60 cubic feet in measurement, say 449 gallons of water. This box when brought to the level was dropped by a rope attached thereto down the slopes and the entries. There was a pipe encircling the ends of the box to throw the water outside of the rails of the track. The box being six feet long, the water, as stated by a witness, in its sprinkle or spray would cover eight inches beyond the ends of the box. In other words, it would sprinkle a width of seven feet four inches; the width of the slope generally being about seven feet, and in places where there was a dip it might be nine feet wide. The evidence was that the distance from the fourth level to the bottom of the lowest level was about 400 feet. From the sixth to the seventh level the witness who did the watering testified that the "lifts were a hundred feet"; and from the seventh down to the face of the slope it was "about one hundred and a quarter"—that is, 125 feet. He further testified

that he turned the box of water loose "about thirty or forty feet below the sixth" (level). He also testified that on previous days he watered the slope once or twice extra, whenever he thought it needed it. How much of this water reached the bottom of the slope is not definitely known. The witness Wilburn, fire boss of the mine at the time, testified that the slopes in the mine the day preceding the explosion were damp; that it was his duty to see that the mine was kept in a safe condition in all respects, and that on the day preceding the accident the slope was in safe condition. Mr. McLean, who was superintendent of the mine at the time, testified that he examined the mine on the day before the accident; that the slope was in ·fair condition in respect of its wetness on the night previous to the explosion; and that they tried in every respect to keep the mine moistened at all times, and it was the duty of the night men to sprinkle; that on this special occasion the man Martin, the first witness above referred to,. was assigned to this duty. Regardless, therefore, of any other testimony, pro or con, touching this issue as to whether or not the fire originated from combustion of coal dust, there was amply sufficient evidence to entitle the defendant to the judgment of the jury as to whether or not it kept the mine well dampened with water to cause the coal dust to settle, and whether or not its failure, if any, in this duty was the proximate cause of the injury. ' The charge of the court to the jury in this respect was as follows:

"If you find by a preponderance of the weight of the testimony that the defendant was negligent by permitting dust to accumulate in its mine in this slope, * * * as complained of by the plaintiff, and by reason of the negligence of the company this coal dust accumulated there, and that it was the cause of the explosion, then the plaintiff should recover of the defendant on account of that negligence in such an amount as the evidence shows he has been injured by reason of this negligence," etc.

Nowhere in the charge did the court submit to the jury the question of fact as to the dampening of the coal dust with water. But, in effect, it told the jury that if the coal dust was suffered to accumulate, and that caused the injury, they should find a verdict for the plaintiff no matter what they might think about the sufficiency of the dampening of the dust. It hardly needs the citation of authorities to maintain that it was palpable error, under such circumstances, to thus ignore in its charge one of the principal issues involved in the defense and supported by evidence. Suppose the jury had returned a verdict for the defendant on the ground that it had not failed of its duty in keeping the coal dust dampened with water; could it be successfully maintained that the verdict should be set aside on the ground that there was no evidence to warrant it?

"Instructions which, taken as a whole, are calculated to· mislead the jury as to the character of the evidence necessary to prove the issue on one side, are erroneous. Rea v. Missouri, 17 Wall. 532–543, 21 L. Ed. 707. Reversible error exists if the general effect of a charge tends to withdraw from the consideration of the jury material evidence. Hall v. Weare, 92 U. S. 728, 23 L. Ed. 500. If an instruction fails to present with sufficient distinction a material fact which may have a controlling effect, there is ground for reversal. Ayers v. Watson, 113 U. S. 594, 609, 5 Sup. Ct. 641, 28 L. Ed. 1093. It is error for the court to submit the evidence and theory of one party prominently and fully to the jury and not call their attention to the main points

of the opposite party's case. Canal Co. v. Harris, 101 Pa. 80; Reichenbach v. Ruddach, 127 Pa. 564, 595, 18 Atl. 432; Young v. Merkel. 163 Pa. 513-520. 30 Atl. 196." Weiss v. Bethlehem Iron Company, 88 Fed., loc. cit. 30, 31 C. C. A. 363, 370.

Error is assigned of the action of the court in refusing to give certain instructions requested by the defendant below. One of these asserted the proposition that if the plaintiff knew, or could have known by the exercise of ordinary care and prudence, the condition of the mine or the part thereof which was the alleged cause of the explosion, then, knowing the defects complained of, he assumed the risks thereof and cannot recover. This request was properly refused. The law did not impose upon the plaintiff the duty of exercising care and prudence to discover the condition of the mine before going to his work. On the contrary, the law, as well as the federal statute hereinbefore mentioned, imposed upon the mine owner the duty of exercising reasonable care to see that the mine was in a reasonably safe condition for the servant to work therein. If the defective or dangerous condition, if any, was so obvious to the eye of the servant at the time and place as to make it apparently dangerous to work there, and he voluntarily saw fit to so work, without complaint, it might be said that he assumed the risk; and the court in its charge gave the defendant the full benefit of this declaration of law.

An instruction refused by the court, which is assigned for error, is as follows:

"Before the plaintiff can recover at all, he must show the proximate cause of the accident. The burden of proof is entirely upon the plaintiff to show such proximate cause. and also to show that said proximate cause existed by or through the negligence of the defendant company, and, unless this is clearly and absolutely shown, the plaintiff cannot recover."

The vice of this request was the employment in the instruction of the word "absolutely." This imposed a condition beyond the requirements of the law, and justified the rejection of the whole request.

Other requests for instructions by the defendant respecting the burden resting upon the plaintiff to show the proximate cause of the injury were fully enough expressed by the charge of the court.

As suggested at the outset of this opinion, in view of the fact that in their last analysis the various grounds of negligence alleged in the petition were reduced on the trial to one or more very simple issues of fact and law, it can subserve no useful purpose to discuss the various objections made by the defendant to certain specifications of the petition. And inasmuch as the judgment must be reversed and the cause remanded for new trial, other matters complained of in respect of questions to and answers by witness are not deemed of sufficient importance to demand discussion, and the errors, if any, may not be repeated on a further trial.

Under the facts and circumstances disclosed by this record, there being neither wantonness nor reckless negligence on the part of the defendant, we cannot refrain from expressing the view that the amount of the verdict awarded by the jury seems to be excessive; so much so as to give color to the impression that there was present in the mind of the jury an element of passion or prejudice. The responsibility of

correcting such abuse by the jury, however, rests upon the trial court, to see to it that justice does not miscarry, by presenting to the plaintiff in such instance the alternative of entering a reasonable remittitur or to submit to a new trial.

For the reasons hereinbefore stated, the judgment of the United States Court for the Indian Territory and the judgment of affirmance by the Court of Appeals thereof must be reversed, with directions to grant a new trial, and the cause remanded to the Supreme Court of the State of Oklahoma for further proceedings in accordance with law.